UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          3:17CR00024(AWT)

        vs.

PETER J. SANTOS
                       HARTFORD, CONNECTICUT
             Defendant     JUNE 2, 2017

- - - - - - - - - - - - - - - x


**JURY TRIAL - VOLUME IV**


    BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.

          AND A JURY OF 12



APPEARANCES:


    FOR THE GOVERNMENT:

        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street, 23rd Floor
        New Haven, Connecticut 06510
        BY:  JOHN H. DURHAM, AUSA

    FOR THE DEFENDANT:

        LAW OFFICE OF NEAL ROGAN
        315  Post Road West
        Westport, Connecticut  06880
        BY:  NEAL PATRICK ROGAN, ESQ.


                  Corinna F. Thompson, RPR
                  Official Court Reporter

**9:58 AM**

THE COURT:  Good morning.  Please be seated.

We've received a note from the jury.  It's been marked Court Exhibit 5.

There are two questions.  The five additional copies of the jury charge, we've made those and those are ready to go in.

And then for the first question they have a question about the use of the word "threatened to kill" in Section I B of the verdict form, and the statement that the elements of the charged offense are threaten to assault or murder.

Counsel have any thoughts?

MR. DURHAM:  Yes, Your Honor.  The government -- I think that the question can be answered very easily and straightforward if the Court were to obviously read the question and then say the answer would be that if the jurors find the defendant, Mr. Santos -- if they find beyond a reasonable doubt that the defendant, Peter J. Santos, either threatened to assault or kill Mr. Topor, then you would return a guilty verdict.

Then the second question is just to clarify whether the jury finds beyond a reasonable doubt that

the threat was to kill him.

I think that --

THE COURT:  Mr. Rogan?

MR. ROGAN:  Your Honor, my position on behalf of Mr. Santos is, first of all, there should be no changes made to the verdict form.  It is what it is. Everybody signed off on it.  And it says quite clearly the question before the jury on this verdict form is beyond a reasonable doubt that he threatened to kill.

As to the instructions on the elements of the offense, the second part of the question, I think providing them additional copies of the jury charge is sufficient.  To recharge them now I don't think is necessary.

THE COURT:  Well, the second part I don't think we have -- we're all in agreement on that.

They would like me to clarify whether they should -- whether they should be -- whether the fact that the verdict form says "threaten to kill" in the interrogatory and the elements of the offense say "threaten to assault or murder" is material.

I mean, I have to respond.  I can't not respond to their question.

MR. ROGAN:  I understand that, Your Honor.

THE COURT:  How do you propose I respond?

MR. ROGAN:  Then just recharge them again on
simply the elements without any clarifying --

THE COURT:  But they want clarification.
They'll sit back and come back with the same question.
How can I not clarify them?

MR. ROGAN:  Sorry, Your Honor.  I was
distracted by Mr. Durham.

What is it that Your Honor is proposing?

THE COURT:  Well, I was getting your thoughts
first, but the jurors have noticed that the elements of
the offense say "threaten to assault or murder" and that
the interrogatory says "threaten to kill."  There's no
substantive difference.  I mean murder is unlawfully
killing with malice aforethought.  That's the definition
in the statute.

MR. ROGAN:  Right.  My interpretation of this
question is they're obviously -- it's only a read is
that they're perhaps considering a verdict that doesn't
include murder.  They may have found that he threatened
to assault.

THE COURT:  Yes.  So how does -- so what do
you propose to do to help the jury?  What do you think
we should do to help the jury?

I mean, the statute -- that penalty version of
the statute, which I went back and checked, has a flat

penalty, and then it has a lesser penalty for assault.

             MR. ROGAN:  Correct.

             THE COURT:  And that's because you also have
in the statute kidnap.

             MR. ROGAN:  Right.

             THE COURT:  I mean, it sort of struck me in
passing that we had murder, that we had killed, but my
mind was on other things and I didn't pause.  It seems
to be the same thing.

             MR. DURHAM:  The government's view would be
consistent with the Court's.  The jury is looking for
clarification.

             I hadn't focused on the point Your Honor is
making, but I focused on it appeared from the
government's reading of the verdict form that it would
be of assistance to the jury to say, as to the first
question, that is the defendant's found guilty or not
guilty, if they find that the defendant has been
proven -- it's been proven beyond a reasonable doubt
that he either threatened to assault or to murder him,
then you should find him guilty.

             If you find the government --

             THE COURT:  I don't think I have to answer
that part.  I don't have to say that.  I don't think
they have a question about that.

MR. DURHAM:  That's how I read that.

THE COURT:  They want to know is why does the verdict form say "kill" for I B, but when they're working with I A it says "murder or assault?"  And I think the answer is if they conclude that he threatened to murder -- if they conclude that the government has proven that they threatened to murder beyond a reasonable doubt, then they should answer yes to Question 2.

MR. ROGAN:  Can I have --

THE COURT:  I mean Question I B.  I'm sorry.

MR. ROGAN:  If that's the limit of the Court's clarification -- now I understand.  I apologize, Your Honor.  I'm fine with that.

THE COURT:  The jury could conclude that Mr. Santos threatened to assault.  They can conclude that he didn't do either.  They could conclude he threatened to assault, they could conclude he threatened to murder, or they could concluded he threatened to assault and also threatened to murder.  If they conclude the third or fourth options, then the government would have proven beyond a reasonable doubt that he threatened to kill.

Do you want me to run through those again?

MR. DURHAM:  I'm following, Your Honor.

THE COURT:  Do you want me to run through
those again?

MR. ROGAN:  Sorry.  Yes, Your Honor.

THE COURT:  The jury could conclude for any
number of reasons Mr. Santos is not guilty.  There
wasn't a threat, or it was a threat but not to kill or
assault.

The jury could conclude that Mr. Santos
threatened to assault and that's it.

The jury could conclude that Mr. Santos
threatened to murder.  That's it.

The jury could conclude that Mr. Santos
threatened to assault and also threatened to murder.

Under those last two possibilities the
government would have proven beyond a reasonable doubt
that he threatened to kill Mr. Topor.

So if the jury concludes that he threatened to
murder Mr. Topor, they should respond "yes" to Question
I B.  I won't tell them how to respond.  I will say the
government met its burden of proof.

MR. DURHAM:  The government would have no
objection to Your Honor going through that with the
jurors exactly as you just did with counsel and to say,
If you concluded that he was not guilty of either
threatening to assault or to murder, you just proceed to

Section II.  If you found that he threatened to assault
but not to murder, you would find guilty as to the first
question and not proven beyond a reasonable doubt as to
Section B.  I mean just walk them through it.

            THE COURT:  I'm also happy just to give a
simple statement that if you conclude that the
government proved beyond a reasonable doubt that he
threatened to murder, then the government has met its
burden, then the answer to Question B would be "yes."
That might be simpler.

            MR. ROGAN:  And that clarity, Your Honor, is
what I would ask the Court to instruct on.

            THE COURT:  Okay.

            MR. ROGAN:  And nothing else.

            MR. DURHAM:  I'm just reading it.  I guess I'm
reading the note differently than Your Honor is.  Maybe
you could ask --

            THE COURT:  We'll start with that shorter
explanation and then I'll tell them if they have a
follow-up question we'll wait and see --

            MR. DURHAM:  If that answers the question?

            THE COURT:  -- if that answers the question.

            MR. ROGAN:  Thank you, Your Honor.

            THE COURT:  All right.  I don't think we need
to bring the alternates out for this unless you would

like them here.

MR. DURHAM:  It would probably be prudent to do that.

THE COURT:  Okay.  We'll bring the alternates out.  Why don't we get the alternates first and just sit them back there.

(Pause.)

MR. DURHAM:  Your Honor, as I reread this, I really do think --

(Alternate jurors brought into the courtroom.)

(Discussion at sidebar off the record.)

(Whereupon, the jury entered the courtroom.)

THE COURT:  Please be seated everyone.

Ladies and gentlemen, thank you for your note.

There were two things in your note.  We have five additional copies of the jury charge and the courtroom deputy has them for you.

As to your first question, We would like to clarify the language between the verdict form, Section I B, which talks about whether the language was proved beyond a reasonable doubt that Mr. Santos threatened to kill Supervisory United States Probation Officer Brian Topor and the elements of the offense in the charge

which states the defendant threatened to assault or
murder.

        We we're having discussions about how I should
respond to your note, so I'm going to give you the
narrowest response I can envision.  If it does not
answer your question, I'll let you give me a follow-up
question.

        If you conclude that the government has proven
beyond a reasonable doubt that Mr. Santos threatened to
murder Mr. Topor, then the government will have met its
burden with respect to Section I B of the verdict form
and the answer would be "yes."

        And my question is:  Does that fully respond
to your inquiry or is there something more you'd like to
know?  Because we could envision a number of different
questions you might be seeking to ask, but we weren't
sure exactly what your concern or area of inquiry was.

        Let me put it this way:  If there's anybody as
to whom I have not fully responded to the question,
please raise your hand.

        (Jurors raised hands.)

        THE COURT:  We're going to ask you step next
door, write out a follow-up question -- actually, let me
talk to counsel.

(Discussion at sidebar off the record.)

THE COURT:  I'm going to let you all go next door and write up your follow-up question and we'll wait here for you.

(Whereupon, the jury left the courtroom.)

THE COURT:  Please be seated everyone.


(Discussion at sidebar off the record.)

(Off the record.)

THE COURT:  It doesn't appear that there's going to be a follow-up question.

MR. DURHAM:  It does not, Your Honor.

THE COURT:  I think -- I don't see a point of setting here.  It will take us five minutes to get back together again if there's a follow-up note.

MR. DURHAM:  Yes, Your Honor.

THE COURT:  We'll recess and as soon as we've left we'll get the follow-up question.

We'll recess.

(Court in recess at 10:41 AM.)


__10:58 AM__

THE COURT:  We'll repeat it when he gets in but we have this note.  It's been marked as Court Exhibit 6.

Just so you all can be thinking about it, it seems to me the most appropriate thing is go through the verdict form and explain it more along the lines of what Mr. Durham was requesting before.  So you all can be thinking about that while Mr. Santos is coming down.

As to the first question, I'm happy to explain to them that we take a general verdict.  If I were to simply say "threaten to kill or assault," it would risk diminishing the other elements, the fact that there are three elements that have to be proven beyond a reasonable doubt.  I think that's what they're asking.

MR. DURHAM:  Your Honor, I think the question they are asking is much narrower than that.

THE COURT:  I'm talking about the first question.  Why doesn't the verdict form mirror everything else we have in writing?  To mirror everything we have in writing we'd have to put in every element of the offense.  I wouldn't want to just have a question that picked up the first element of the offense.  That's what I'm saying.

MR. DURHAM:  I think that's pretty clear from the note that that's what they're talking about, the first element if you combine the two notes that we've received today.

THE COURT:  I know they're talking about the

first element.  I agree.

MR. DURHAM:  I think that --

THE COURT:  But I don't think we want a
verdict form that says -- when we say guilty, not
guilty, the charge is structured so the message is
reinforced that the government has to prove all three
elements.  And given the captions in the charge, my
concern about just saying "threatened to assault or
murder" in the jury verdict form for Count 1 would be
that the jury could possibly forget to look at
Elements 2 and 3.

So that's why we have a general verdict, as
opposed to a verdict that risks focusing the attention
on one element.

Then as to the second question, I mean, no.
But I think the way to respond to it is to say there are
four possibilities here, which is basically what the
government was asking me to do last time.

MR. DURHAM:  Yes, Your Honor.

THE COURT:  And that is in the context of
walking them through the verdict form, because that's
what they're confused about, the verdict form.

Mr. Rogan?

MR. ROGAN:  Yes, Your Honor.  Obviously I
agree with the Court that we don't want to change the

verdict form.  I'm not so sure that we should start to
give them options as to what the possible outcomes could
be as Mr. Durham suggested.

If you could walk me through them again, Your
Honor.

THE COURT:  It's not options.  I think if I
had -- there are times when I do this when I'm
explaining the verdict form.  I think they're thinking
that I A and B go together.  It doesn't seem to me that
they're understanding that you don't get to I B unless
you have checked guilty for I A.  They're looking at the
question in I B as being part of the process of
considering guilty or not guilty.  It's part but not the
whole thing in terms of the process.

So I mean what I think I need to make sure the
jurors understand is that when they are in Section I A,
the government has to prove all three of the essential
elements of the offense in order for the government to
meet its burden of proof.  If not, they check not
guilty.

If the government has proven all three of the
elements, there are at least three possibilities I can
think of of how it did so.  One is the government proved
that Mr. Santos threatened to assault and only that.

Second, the government proved that Mr. Santos

threatened to kill and only that.

       Or the government proved both, that he threatened to kill and that he threatened to assault.

       But they don't get to this unless they've reached a verdict of guilty.

       MR. DURHAM:  Right.

       THE COURT:  So I think put that way it sort of walks them through the form, and I frequently do that when I go through the verdict form.

       MR. ROGAN:  And that's fine, Your Honor, because of the last thing you said.  But that's not -- so the preparatory language you're going to walk them through the three elements of the crime, and then you're going to say that you don't get to -- they've got to prove each and every one of those three elements beyond a reasonable doubt.

       THE COURT:  Yes.

       MR. ROGAN:  And you don't get to Question B unless you find guilty on each of every one of those three elements.

       THE COURT:  Well, unless you find the government has proven each one of those three elements. Not guilty on each of those elements.

       MR. ROGAN:  Sorry; that they've proven beyond a reasonable doubt each and every one of those three

elements.

THE COURT:  Yes.

MR. ROGAN:  But they don't get to Question B
unless the government's met its burden of proof as to
the three elements of the offense charged.

THE COURT:  Yes.  I'm going to emphasize those
parentheticals next to guilty and not guilty.

MR. DURHAM:  I would just urge the Court to
follow its practice of being conservative and more
narrow rather than broader.  I don't think the jury is
asking for any clarification on the other two elements.
There are three elements of the offense.

THE COURT:  They're not, I don't believe.  But
I think in order to be balanced.

MR. ROGAN:  And not just emphasize the first
element.

THE COURT:  And not just emphasize if they
conclude guilt.

MR. DURHAM:  That's where I take issue because
they're asking about the first element.  We should
answer them about the first element.

THE COURT:  I will.  I will.  I won't urge
them to acquit if that's what the government is
concerned about.

MR. DURHAM:  No.  I think the Court's practice

of narrowing it to the question is the prudent course.

THE COURT:  Well, narrow is different from conservative.

Let's bring in the alternates and then the jurors and we'll see if this works.

(Alternates brought into courtroom.)

THE COURT:  I was sitting here thinking we look at things and it's so clear to us, but we're making all of these rapid leaps in terms of logic and processing that for lay people it's not that clear.

MR. DURHAM:  The analogy I think when you do a wire tap -- not a wire tap, when you do room bugs.  It's great when you get the conversation.  But then when you get intercepts from room bugs as opposed to phones, we filter out all the background noise so you can listen to the conversation.  When you actually listen to one of those tapes, it's oftentimes nearly impossible to hear what's being said because of the sound of lights and chairs.  We just filter that out.

(Whereupon, the jury entered the courtroom.)

THE COURT:  Please be seated everyone.

Welcome back, ladies and gentlemen.

I have your note.  It's been marked as Court Exhibit 6.  I'm going to read it first so everybody

knows what the note says.

Question 1:  Why doesn't the verdict form language mirror everything else we have in writing and your verbal instructions?

Question 2:  Is it possible to add "assault or" in quotation marks, to Verdict Form I B, or remove the words "to kill"?

What I'm going to do is I'm going to sort of walk you through the verdict form and explain the way it's structured, which I hope will answer both questions.

So I'll refer to sections of the charge.

Section I A is your general verdict as to whether the government has proven beyond a reasonable doubt that Mr. Santos is guilty.

Now, in order to check guilty for Question I A, the government has to have proven the first element, the second element and the third element of the offense, which you see in the charge that you've gotten.

If the government has not, then the verdict is not guilty.  And you'll see when you look at the verdict form it says, If you check not guilty, you proceed to Section II.

We should give you extra copies of the verdict form.

Section II says you've completed your deliberations.

So if you conclude not guilty, then you don't get to Section I B.

Now, if you check guilty, then the verdict form says you go to Section I B.  Section I B is an additional question; namely, an additional question beyond whether the defendant is guilty or not guilty. And the reason that question is there is that if you found guilty, there are some different ways you could have come to the conclusion that the government proved guilt:

You could have concluded that the government proved beyond a reasonable doubt that Mr. Santos threatened to assault and only that.

You could have concluded that Mr. Santos threatened to kill, or murder is the language in the charge, and only that.

Or you could have concluded that Mr. Santos threatened -- the government proved that Mr. Santos threatened to assault and also threatened to murder.

So what Question I B gives to the parties and the Court, in the event there is a conviction, is some information about the basis for the guilty verdict.

Under the three scenarios I gave you, if the

basis of the guilty verdict was threatened to assault and only that, the answer would be no.

If the basis of a guilty verdict were to be threatened to murder and only that, the answer to Question I B would be yes.

If the rationale for a guilty verdict were to be threatened to assault and also threatened to murder, the answer to Question I B would be yes.

So hopefully that explains that you cannot add "assault or" to the verdict form in I B, or remove the words "to kill," and also explains why the verdict form doesn't mirror everything else that's in the charge.

It looks like at least most people are nodding their heads that this has been helpful.

THE JURY:  Yes.

THE COURT:  We'll let you go back to the jury room.

Thank you.

(Whereupon, the jury left the courtroom.)

THE COURT:  Mr. Durham gets a bonus for construing jury notes.

MR. ROGAN:  Sorry, Your Honor?

THE COURT:  Mr. Durham gets a bonus for construing jury notes.

Thank you all.  We'll recess.

(Court was in recess at 11:13 AM)


11:59 AM

THE COURT:  We'll bring in the jury with a
note that we have a verdict.

(Whereupon, the jury entered the
courtroom.)

(Alternates brought in courtroom.)

THE COURT:  Please be seated everyone.

Ladies and gentlemen, I've informed counsel
and the parties that I received a note from the jury
indicating that the jury has unanimously agreed upon its
verdict.  I'd like to confirm that with the foreperson.

THE FOREPERSON:  We have, Your Honor.

THE COURT:  At this point I would like you to
give the verdict form to the clerk so she can give it to
me.

(Pause.)

THE COURT:  At this time, members of the jury,
your verdict will be published.  That means that the
clerk will read it out loud.

You should pay close attention as she does so
because after the verdict is published the jurors will
be polled; that is, they will be asked individually
whether this is their verdict in all respects.

Madam Clerk.

THE CLERK:  In the case of the United States of America versus Peter J. Santos, Criminal Number 3:17CR24(AWT), the verdict form reads as follows:

Section I.

A:  As to the charge set forth in the Count 1 of the indictment, we, the jury unanimously find that defendant Peter Santos is guilty.

B:  We the jury unanimously find that the government proved beyond a reasonable doubt that Mr. Santos threatened to kill Supervisory United States Probation Officer Brian Topor:  No.

Section II:  It is signed by the foreperson, dated at Hartford, Connecticut on this 2nd day of June, 2017 at 11:25 a.m.

THE COURT:  Thank you.

At this time the clerk will poll the members of the jury.

THE CLERK:  Juror Number 1, is this your verdict?

JUROR #1:  Yes.

THE CLERK:  Juror Number 2, is this your verdict?

JUROR #2:  Yes.

THE CLERK:  Juror Number 3, is this your

verdict?

JUROR #3:  Yes.

THE CLERK:  Juror Number 4, is this your
verdict?

Let me start again.  Please excuse me.

Juror Number 1, is this your verdict?

JUROR #1:  Yes.

THE CLERK:  Juror Number 3, is this your
verdict?

JUROR #3:  Yes.

THE CLERK:  Juror Number 4, is this your
verdict?

JUROR #4:  Yes.

THE CLERK:  Juror Number 5, is this your
verdict?

JUROR #5:  Yes.

THE CLERK:  Juror Number 6, is this your
verdict?

JUROR #6:  Yes.

THE CLERK:  Juror Number 8, is this your
verdict?

JUROR #8:  Yes.

THE CLERK:  Juror Number 9, is this your
verdict?

JUROR #9:  Yes.

THE CLERK:  Juror Number 11, is this your verdict?

JUROR #11:  Yes.

THE CLERK:  Juror Number 12, is this your verdict?

JUROR #12:  Yes.

THE CLERK:  Juror Number 13, is this your verdict?

JUROR #13:  Yes.

THE CLERK:  Juror Number 14, is this your verdict?

JUROR #14:  Yes.

THE CLERK:  And Juror Number 15, is this your verdict?

JUROR #15:  Yes.

THE COURT:  Thank you.

Members of the jury, you have now done your duty.  You have diligently paid attention to the evidence in this case and you have carefully deliberated and our alternate jurors have faithfully stood by to be called upon in the event they were needed.

As I'm sure you are aware, a decision by a jury will usually gratify one side and disappoint the other.  Making decisions such as what you've been asked to do in this case, decisions which are so important to

our society and of course to the individual defendant, is not easy.  All of us know that and all of us understand that.  So all of us are grateful to you for your performing this important and difficult assignment.

And the reason that we are all grateful to you is really quite simple:  All of us believe in a system of justice that places in our fellow citizens the responsibility for administering justice.  All of us believe in a system of self-government, and that means a system in which jurors drawn from our community play a central role, namely, the role that you've played in this case.

I do want to say an extra added thank you to our alternates for standing by in the event you were needed and for your service throughout the trial.  Your participation was indispensable to the proper functioning of our criminal justice system, so thank you especially.  So I thank all of you for our hard work and your contribution to our system of justice.

You are now discharged.  Please note you are under no obligation to discuss the case with anyone, including the parties, the lawyers or any members of the press.  And in a moment after court recesses I will come back to the jury room so I can thank each of you personally.

Once again, thank you for your service.

You're free to go to the jury room and your lunch should have arrived.

(Whereupon, the jury left the courtroom.)

THE COURT:  Please be seated everyone.

Mr. Santos, our normal procedure is that we have a member of the United States Probation Office contact you to interview you in connection with the process of preparing a Presentence Report.  I am going to confer with our chief probation officer to see if there's a special procedure that we need to follow in a situation like this where the victim is a member of the probation office.  I don't know whether they have some mechanism for making sure that somebody in another office does it or somebody in another district does it. I've not encountered this situation before so I will inquire about that and I'll let counsel know as soon as I know.

But in any event, there will be a probation officer who will contact you through your counsel, arrange to conduct an interview in connection with the preparation of a Presentence Report.  That probation officer, I think you are aware, works for the court, not for the prosecutor.

You should be discussing with your counsel

what happens during a presentence interview so you can
be prepared for that interview because the report is an
important part of the process of determining what your
sentence will be.

I think our schedule puts sentencing at
August 25, 2017.  I'll let counsel check their calendars
to make sure nobody is on vacation then.

MR. DURHAM:  Your Honor, I have sentencings
that day in front of Judge Chatigny in the morning.  I'm
not sure if Your Honor would be scheduling it in the
morning or afternoon?

THE COURT:  I could do the afternoon.

MR. DURHAM:  I could do the afternoon.

MR. ROGAN:  That is, Your Honor, a scheduled
vacation week for me.  However, if it's going to be in
the afternoon, I can accommodate it.  I'd prefer not to,
but obviously will defer --

THE COURT:  Are you back the following week?

MR. ROGAN:  Yes, Your Honor.  And to be clear,
Your Honor, the reason I said I could do it is it a
stay-at-home vacation with my children, but it's a
scheduled time.

THE COURT:  I suspect your children would
prefer that I let you stay at home with them.

MR. ROGAN:  Thank you, Your Honor.

THE COURT:  So why don't we look at the next
week, say the 29th or so.

MR. ROGAN:  That's wide open, Your Honor.

THE COURT:  How is that for you, Mr. Durham?

MR. DURHAM:  May I have a moment?

(Pause.)

MR. DURHAM:  What date is that?

THE COURT:  It's a Tuesday.

MR. DURHAM:  That's fine with the government,
Your Honor.

THE COURT:  So we'll say August 29th.  We'll
do 2:00 p.m.

MR. ROGAN:  That's fine, Your Honor.

THE COURT:  And the Presentence Report will be
disclosed to the defendant, counsel for the defendant
and government no later than 35 days prior to
sentencing.  And the revised Presentence Report must be
disclosed to counsel and to the Court no later than 14
days prior to sentencing.

If there are logistical complications in terms
of getting the Presentence Report prepared, I'll confer
with counsel and come up with a date.

MR. ROGAN:  Your Honor, I just need to again
procedurally, now that the verdict has been rendered, to
protect my client's appellate right, once again renew my

Rule 29 motion for judgment of acquittal as I
articulated on the previous two occasions.

        THE COURT:  Thank you.  And the motion is
denied.

        MR. ROGAN:  Understood.

        THE COURT:  Anything else before we recess?

        MR. ROGAN:  No, Your Honor.

        MR. DURHAM:  The government has nothing.
Thank you.

        THE COURT:  Thank you both.

        MR. ROGAN:  Thank you.

            (Whereupon, a recess followed.)

                12:17 PM

C E R T I F I C A T E

UNITED STATES VS. PETER J. SANTOS

3:17CR00024(AWT)


        I, Corinna F. Thompson, RPR, Official Court

Reporter for the United States District Court for the

District of Connecticut, do hereby certify that the

foregoing pages, pages 600 - 628, are a true and

accurate transcription of my shorthand notes taken in

the aforementioned matter on June 2, 2017, to the best

of my skill and ability.




            /s/_____

            CORINNA F. THOMPSON, RPR
            Official Court Reporter
            450 Main Street, Room #225
            Hartford, Connecticut 06103
               (860) 547-0580