UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES | : | DOCKET NO. 3:17CR24 (AWT) |
|---|---|---|
| v. | : | |
| PETER SANTOS | : | NOVEMBER 13, 2017 |

## MEMORANDUM IN AID OF SENTENCING

The defendant, Peter Santos, submits this memorandum in aid of sentencing, which is presently scheduled for December 18, 2017 at 11:00 a.m.[1] Mr. Santos faces sentencing following a conviction for one count of Threatening to Assault a Federal Official in violation of 18 U.S.C. § 115(a)(1)(B). He was arrested on those charges based on a complaint dated October 28, 2016, and he has been incarcerated since that time. For reasons discussed herein, Mr. Santos respectfully submits that a sentence of time served, or approximately 10 months, is sufficient but not greater than necessary to satisfy the requirements of 18 U.S.C. § 3553(a).[2]

**I.    INTRODUCTION**

There is no dispute that Mr. Santos exhibited a tremendous lack of respect for the Court and the United States Probation Office by his impulsive comments. Mr.

---

[1] The Court has not yet ruled on Mr. Santos' Motion for Judgment of Acquittal or, in the alternative, Motion for New Trial. Mr. Santos therefore submits this memorandum in the event the Court denies the pending motion.

[2] Mr. Santos has been in custody since he was detained on the supervised release violation on August 25, 2016, but he has been serving a sentence on his supervised release violation. That sentence expired on February 22, 2017. The complaint in the instant case was filed on October 28, 2016, and Mr. Santos was presented to the Court on the complaint on January 30, 2017. A grand jury returned an indictment on February 7, 2017.

1

Santos has long-suffered from opioid addiction, and his addiction, coupled with his depression, are what have often prompted Mr. Santos to speak without thinking.  Mr. Santos was convicted by a jury for threatening to assault United States Probation Officer Brian Topor based on Mr. Santos' unplanned, spontaneous statement in court.  Yet, in fashioning his sentence, this Court should be cognizant of the fact that this case is not within the heartland of the guidelines, and that the enhancements reflected in the presentence report would result in a significant sentence that is not warranted by the conduct at issue here.

At the time of this case, Mr. Santos had never been arrested for a crime of violence, and had never expressed violent tendencies to the probation officers.  He had been on supervised release, but out in the community using drugs until his arrest on a supervised release violation on August 25, 2016.  At that time, he was ordered detained, so he had only been incarcerated for six days at the time that he appeared before Judge Arterton.  He was certainly experiencing symptoms of withdrawal, and he spoke impulsively in a moment of anger.  There was no deliberation; there was no planning; there was no follow through; and the statement was delivered in such a manner that not even the U.S. Marshals took any additional precautions in escorting him from the courtroom.

This case is not within the heartland of cases involving threats to federal officials, but rather represents a delicate balance between the First Amendment rights of a defendant and the need to impose a sentence following a verdict.  For reasons stated

herein, Mr. Santos respectfully submits that this Court should impose a sentence of time served, either by way of departure or variance.

**II.     GUIDELINES APPLICATION**

Mr. Santos filed objections to the Probation Office's presentence report that are presented here for the Court's resolution. The bulk of the objections concern the Probation Office's application of §2A6.1 to calculate Mr. Santos' offense level. The Probation Office applied §2A6.1(b)(2)(A) based on its determination that Mr. Santos "made a number of threats to assault or murder a Probation Officer," which resulted in a two-level increase. *See* PSR at ¶ 22. Since the Probation Office arrived at this conclusion, it also concluded Mr. Santos was not eligible for a four-level decrease pursuant to §2A6.1(b)(6), which the Court may apply where the case "involved a single instance evidencing little or no deliberations." The Probation Office also imposed a 6-level increase pursuant §3A1.2 based on Mr. Topor's status as a federal official.

Mr. Santos respectfully submits that the Probation Office misapplied the guidelines to this case, and asks that this Court remove the two-level increase and apply the four-level decrease, which would result in a total offense level of 14 and a guideline range of 21 to 27 months. Mr. Santos also requests that the Court depart from the guideline range on the grounds that this case is outside the heartland of the guidelines.

**A.     APPLICATION OF USSG §2A6.1**

**i.     Overview of Probation Office's analysis**

The Probation Office takes the position that Mr. Santos issued multiple threats

herein, Mr. Santos respectfully submits that this Court should impose a sentence of time served, either by way of departure or variance.

**II.     GUIDELINES APPLICATION**

Mr. Santos filed objections to the Probation Office's presentence report that are presented here for the Court's resolution. The bulk of the objections concern the Probation Office's application of §2A6.1 to calculate Mr. Santos' offense level. The Probation Office applied §2A6.1(b)(2)(A) based on its determination that Mr. Santos "made a number of threats to assault or murder a Probation Officer," which resulted in a two-level increase. *See* PSR at ¶ 22. Since the Probation Office arrived at this conclusion, it also concluded Mr. Santos was not eligible for a four-level decrease pursuant to §2A6.1(b)(6), which the Court may apply where the case "involved a single instance evidencing little or no deliberations." The Probation Office also imposed a 6-level increase pursuant §3A1.2 based on Mr. Topor's status as a federal official.

Mr. Santos respectfully submits that the Probation Office misapplied the guidelines to this case, and asks that this Court remove the two-level increase and apply the four-level decrease, which would result in a total offense level of 14 and a guideline range of 21 to 27 months. Mr. Santos also requests that the Court depart from the guideline range on the grounds that this case is outside the heartland of the guidelines.

**A.     APPLICATION OF USSG §2A6.1**

**i.     Overview of Probation Office's analysis**

The Probation Office takes the position that Mr. Santos issued multiple threats

against the probation department, and that therefore those "threats"—regardless of whether they occurred prior to, during or after the offense of conviction—constituted relevant conduct subject to the Court's consideration under USSG §1B1.3.  PSR at p. 30-31.  Mr. Santos respectfully disagrees.

The offense of conviction is centered around Mr. Santos' statements to Mr. Topor after court on August 31, 2016.  The Probation Office, however, identified two additional "threats" to impose an enhancement pursuant to §2A6.1(a)(2): (1) Mr. Santos' statement to U.S. Marshals in the elevator that "[E]veryone has to meet their maker, whether it is by me or some other way"; and (2) a September 27, 2016 phone conversation with a friend where he stated "when you see Dan tell him, I said f*** you, and I am going to kill you when I get out," adding, "tell him I send my love."  PSR ¶¶ 12, 16.  This latter statement referenced a different member of the Probation Office—Daniel Leone—and was not ever communicated to Mr. Leone by Mr. Santos.

Mr. Santos raised two objections to this enhancement.  First, Mr. Santos argued that since the purported threats occurred after the offense of conviction, they should not be considered, consistent with the application note to §2A6.1.  *See* Application Note 1, §2A6.1.  Second, Mr. Santos argued that these statements were not threats within the meaning of §2A6.1.

In its response to Mr. Santos' first objection, the Probation Office wrote the following:

> [I]t is noted that USSG §1B1.3, relevant Conduct…states that Chapter 2 and Chapter 3 guideline calculations shall be determined by *all acts* and omissions committed, aided, abetted, counseled, commanded, induced,

4

> procured, or willfully caused by the defendant. The defendant's statements were his own actions and constituted a continuing course of conduct to the charged offense.
>
> * * *
>
> [T]he Probation Department maintains that the defendant issued separate threats as part of the commission of the instant offense. While the indictment in this matter states that the offense occurred "one or about August 31, 2016," it is the Probation Department's position that "the offense" involved all threatening conduct committed by the defendant towards the federal officer that preceded the date in the Indictment and continued through the defendant's September 27, 2016, telephone conversation.

PSR, p. 30-31. As to Mr. Santos' position that these statements were not "threats" warranting an enhancement, the Probation Office opined that these statements were "clearly threatening" and warranted the enhancement. *Id.*

      **ii.** **The Probation Office's reliance on §1B1.3 is misplaced because offenses under §2A6.1 are not grouped, and therefore are not subject to the broader relevant conduct analysis under §1B1.3.**

The ability to treat these statements as relevant conduct hinges on whether they are groupable within the meaning of §3D1.2. There are two statements at issue: one concerns a statement made to the U.S. Marshals in the elevator that is not directed to or about a particular person; the second, stated to a third-party in a phone call a month after the offense of conviction, concerned another individual, Probation Officer Daniel Leone. The fact that these other statements were not directed toward Mr. Topor is pertinent to this Court's analysis.

Section 1B1.3(a)(2) provides that where, as here, the applicable guideline provision provides for more than one base offense level, a Court should only consider

5

relevant conduct where the offenses are grouped.  See USSG §1B1.3(a)(2).[3] All offenses in Chapter Two, Part A (with the exception of §2A3.5) are *not* groupable pursuant to §3D1.2(d).  Indeed, the application notes to §2A6.1 state this explicitly, explaining that multiple counts involving different victims are not to be grouped under §3D1.2.  Application Note 3, §2A6.1.[4]  Therefore, since §3D1.2 would not require grouping of multiple counts involving different victims, the provisions of §1B1.3(a)(2) do not apply, since it is only "offenses of a character for which §3D1.2(d) would *require grouping* of multiple counts" that warrant consideration of "all acts of omissions…that were part of the same course of conduct or common scheme or plan as the offense of conviction."  §1B1.3(a)(2).  Accordingly, the Court is limited to the "offense of conviction," which is defined as "the offense conduct charged in the count of the indictment or information of which defendant was convicted," and would not include the other "threats" referenced in the PSR.  See USSG §1B1.2(a).

---

[3] USSG §1B1.3(a)(2)  provides as follows: "Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics, and (iii) cross references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following: … solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction."

[4] Application Note 3 to §2A6.1 states that multiple counts involving the same victim are grouped, but §3D1.2 notes that "even if counts involve a single victim, the decision as to whether to group them together may not always be clear cut" as the Court must distinguish between what constitutes a single transaction or occurrence, and what may constitute distinct offenses.  Application Note 8, §3D1.2.

It is also clear that this is not a common scheme or plan.  Section 1B1.3 is designed to account for "a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing."  Background Comment to §1B1.3.  Threats constitute separate, discrete events.  Accordingly, these statements could not be treated as relevant conduct.

> iii. **The two statements relied upon by the Probation Office for imposing this enhancement occurred after the offense, and therefore should not be considered in imposing this enhancement.**

Since for reasons stated *supra*, the Court should not deem these other statements as relevant conduct, it should follow the guidance contained in the Application Notes to §2A6.1.  Application Note 1 provides that "[i]n determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider both conduct that occurred *prior to* the offense and conduct that occurred *during* the offense."  See USSG §2A6.1, Application Note 1 (emphasis added).  The statements used as the basis for this enhancement occurred after the offense, not prior to or during the offense.  Accordingly, this enhancement does not apply.

In his objections, Mr. Santos referenced the case of *United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006), in which that court found that it was error to apply an enhancement pursuant to §2A6.1(b)(1) where the statement was made after the offense had ended.  The Probation Office distinguished this case on the grounds that it involved §2A6.1(b)(1) instead of (b)(2), and that it involved a statement made after the offense that suggested an intent to carry out a threat.  See PSR at p. 30-31.  This is a distinction

without a difference.  First, the application note applies equally to (b)(1) and (b)(2), so the fact that the *Scott* case concerns (b)(1) does not mean it is not applicable to the case at bar.  See Application Note 1, *supra*.   Second, a subsequent Court considering the application of (b)(2) relied on *Scott* to hold that it was error to consider four additional threatening letters as relevant conduct after the offense had been completed.  *See United States v. Sheppard*, 243 Fed. Appx. 580 (11th Cir. 2007).  Consequently, where, as here, the additional statements occurred after the offense of conviction, and the relevant conduct provisions are not pertinent, this Court should not consider them as a reason to impose an enhancement pursuant to §2A6.1(b)(2).

> **iv.     Even if the Court determines that the statements should be considered as relevant conduct, the statements are not threats within the meaning of §2A6.1.**

It is critical, when prosecuting speech, that a Court discern what constitutes a threat, and what constitutes pure speech protected by the First Amendment.  As this Circuit has held, First Amendment concerns are satisfied by construing "the word 'threat' to exclude statements which are, when taken in context, not 'true threats' because they are conditional and made in jest."  *United States v. Francis*, 164 F.3d 120, 122-23 (2d Cir. 1999).

A "threat" within the meaning of §2A6.1 has the same meaning as it does in statutes criminalizing threats.  *See United States v. Spring*, 305 F.3d 276, 280 (4th Cir. 2002).  Therefore, a "true threat" is one that an "ordinary, reasonable [person] who is familiar with the context of the [communication] would interpret… as a threat of injury." *Id.* at 280 (citing *United States v. Francis*, 164 F.3d 120, 122 (2d Cir. 1999)).  Although

8

in *Spring*, a case cited by the Probation Office, the Fourth Circuit concluded that a threat communicated to a third-party may qualify as a threat, there are cases, such as the instant matter, where the fact the threat was not communicated to anyone other than a third-party arguably brings it closer to the realm of protected speech.  As the *Spring* court noted, "[w]e do not hold that the failure to communicate a threat to its intended victim is entirely irrelevant.  Whether a threat was communicated to the victim may affect whether the threat could reasonably be perceived as an expression of genuine intent to inflict injury."  *Spring*, 305 F.3d at 280.

The Ninth Circuit noted in a case concerning threats made against President Obama that "[w]hen our law punishes words, we must examine the surrounding circumstances to discern the significance of those words' utterance, but must not distort or embellish their plain meaning so that the law may reach them." *United States v. Bagdasarian*, 652 F.3d 1113, 1120 (9th Cir. 2011).  Looking at the circumstances of these statements and Mr. Santos' criminal history, to treat them as threats is an embellishment.  The first statement, which was made in the presence of the U.S. Marshals in the elevator, was not a threat at all.  It was not directed to any person, and the statement that "We are all going to meet our maker" is a statement of fact.  It is also ambiguous as to whether the statement directed to others, to no one or to himself.  Mr. Santos had just learned he was going to be incarcerated, he was frustrated, and he was depressed.  This type of statement is closer to the realm of free speech, and should be treated as such.

The second statement concerning Mr. Leone, made on a phone call at Wyatt to a

third-party, was said in jest.  Although this may not be reflected in the transcript, a recording of the call indicates that Mr. Santos is laughing.  This statement was not a threat, referenced a different person, and was never directed at that person.

>    **B.    Since Mr. Santos' Offense Consisted Of A "Single Instance Evidencing Little Or No Deliberations," This Court Should Impose A Four-Level Decrease Pursuant To § 2A6.1(b)(6).**

Since, as discussed *supra*, § 2A6.1(b)(2)(A) should not apply, Mr. Santos respectfully submits that the Probation Office should apply a 4-level reduction pursuant to §2A6.1(b)(6), which provides that where (b)(2)(A) does not apply and "the offense involved a single instance evidencing little or no deliberations, decrease by 4 levels."

The Second Circuit has held that the 4-level departure under §2A6.1(b)(6) should be "available to a defendant whose threat is the product of a 'single impulse, or [is] a single thoughtless response to a particular event'":

> [W]e hold here that the "deliberation" to be considered under §2A6.1(b)(6) of the Sentencing Guidelines is deliberation related to the communication of the threat itself.  Only if a defendant's course of conduct leading up to and following the time the threat was made is closely tied to the communication of the threat, or if the defendant makes any effort to carry out the threat, may the conduct then provide a basis for inferring deliberation sufficient to reject the four-level reduction.

*United States v. Wright-Darrisaw*, 781 F.3d 35, 41 (2d Cir. 2015).  It is clear that Mr. Santos' statements in the courtroom on August 31, 2016 evidenced no deliberation, and was the product of a "single thoughtless response to a particular event."  The first witness who testified at trial opined that Mr. Santos appeared to be "blowing off steam."  See Trial Tr. 5/30/17 at 99.  The marshals took no additional precautionary measures.

There is no evidence indicating any deliberation in communicating the threat, and accordingly this departure should be applied.

>    C.    **The Court Should Consider Whether The Facts Of This Case Warrant A Six-Level Enhancement Pursuant To §3A1.2.**

The Probation Office applied a six-level enhancement pursuant to §3A1.2(b) because "the victim was a government officer or employee," the "offense of conviction was motivated by such status," and the applicable Chapter Two guideline is from Chapter Two, Part A.[5]  *See* PSR at ¶ 23.  A six-level increase for Mr. Santos' conduct, however, is unduly severe for the facts of this case.  Notably, a six-level increase is also warranted for much more significant conduct, generally "circumstances tantamount to aggravated assault…against a law enforcement officer...or against a prison official" that are sufficiently serious to create "at least a substantial risk of serious bodily injury." Application Note 4, §3A1.3.  Here, there was no conduct evidencing any deliberation or intent to carry out a threat.  Mr. Santos had no violent history, and notably, the marshals took no additional precautions after he made the statement to Mr. Topor.  Even the court reporter thought he was just blowing off steam.

The nature of this offense, therefore, removes it from the "heartland" of cases contemplated by the sentencing guidelines.  A departure may be warranted when a case is not typical of those involving the same criminal conduct:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct

---

[5] The application of an enhancement for the victim being a government officer appears to amount to double-counting since Mr. Topor's status as a federal probation officer is already accounted for in the offense of conviction.  The Second Circuit and others, however, have rejected that argument.

> that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

USSG, Ch. 1, Pt. A, cmt. 4(b). When determining whether a case falls outside the "heartland" of the guidelines, the sentencing court should consider (1) the features of the case that make it special or unusual, (2) whether the Commission forbid departures based on those features, and, if not, (3) whether the Commission encouraged departures based on those features, and (4) whether the Commission discouraged departures based on those features." *Koon v. United States*, 518 U.S. 81, 95 (1996). Here, the Sentencing Commission appears to encourage departures in cases governed by §2A6.1 by its recognition of the wide range of conduct that may fall under the rubric of this provision. Application Note 4 to §2A6.1 states as follows:

> The Commission recognizes that offenses covered by this guideline may include a particularly wide range of conduct and that it is not possible to include all of the potentially relevant circumstances in the offense level. Factors not incorporated in the guideline may be considered by the court in determining whether a departure from the guidelines is warranted.

The Note goes on to say: "These statutes cover a wide range of conduct, the seriousness of which depends upon the defendant's intent and the likelihood that the defendant would carry out the threat. The specific offense characteristics are intended to distinguish such cases." Background, §2A6.1. This language encourages the courts to depart, and supports a heartland departure when the conduct is less severe. It is therefore appropriate here to decline to impose a six-level enhancement under the circumstances of this case.

12

### III. IN THE ALTERNATIVE, THIS COURT MAY ARRIVE AT A TIME SERVED SENTENCE BY WAY OF A VARIANCE.

It is clear from the PSR that Mr. Santos' adult life has been ruled by addiction. His criminal history reflects that nearly every occasion when he has been in trouble has been a result of his heroin use. It has led him to be impulsive, make terrible decisions, and, as evidenced at the hearing before Judge Arterton, react impulsively and inappropriately. In addition, he has a previous diagnosis of major depressive disorder, *see* PSR at ¶ 55, and it is unknown whether it is the cause or the effect or his prolonged drug use. Nat'l Inst. On Drug Abuse; Nat'l Inst. Of Health, U.S. Dept. of Health and Human Services, Research Report Series: Heroin (Nov. 2014) [6] (noting that chronic heroin use often results in mental health disorders such as major depression). Notably, Mr. Santos has no violent history either in his criminal record or in his interactions with the Probation Office. He has, however, been entirely governed by his desire to get high. This is consistent with long-term heroin use, for as the National Institute on Drug Abuse has observed, "[o]nce a person becomes addicted to heroin, seeking and using the drug becomes their primary purpose in life." *Id.* These behaviors are part and parcel of addiction, particularly heroin addiction, and consistent with an individual who is driven to use more than he is driven to get clean.

Use of heroin over the past 20 years has inevitably had a significant impact on Mr. Santos' physical and mental health. *See* Nat'l Inst. On Drug Abuse; Nat'l Inst. Of

---

[6] This article may be found at https://www.drugabuse.gov/publications/research-reports/heroin/letter-director (last accessed November 13, 2017)

Health, U.S. Dept. of Health and Human Services, Drug Facts-Heroin (July 2017)[7] ("Studies have shown some loss of the brain's white matter associated with heroin use, which may affect decision-making, behavior control, and responses to stressful situations."). The evidence at trial demonstrated that Mr. Santos has little impulse control, that he was governed by his addiction, and therefore lacked the basic skills to accept Judge Arterton's determination that he be remanded to prison instead of returning to a substance abuse treatment program. He spoke improvidently, and continued to do so in his phone calls with others. Perhaps most telling is the reaction of the U.S. Marshals after the hearing, who took no additional precautions, and who merely cautioned him to be smart, and not say stupid things. Mr. Santos' immaturity and impulsiveness have been punished by these past months in prison. A sentence more significant than time served would be unduly punitive.

## CONCLUSION

A fundamental principle of sentencing is that a court "shall impose a sentence sufficient, but not greater than necessary" to meet the goals of sentencing. 18 U.S.C. § 3553(a). Mr. Santos' background, history and characteristics, when viewed relative to the nature of the offense, support a sentence of probation. Such a sentence is just, provides sufficient deterrence, and accounts for the error in judgment that has brought Mr. Santos before this Court.

---

[7] This article can be found at https://www.drugabuse.gov/publications/drugfacts/heroin (last accessed November 12, 2017)

Respectfully submitted,

THE DEFENDANT,
PETER SANTOS

   /s/  Allison M. Near
Allison M. Near, ct27241
Sheehan, Reeve & Near
350 Orange Street, Suite 101
New Haven, CT   06511
(203) 787-9026 (phone)
(203) 787-9031 (fax)
anear@sheehanandreeve.com

## CERTIFICATE OF SERVICE

     I hereby certify that this MEMORANDUM IN AID OF SENTENCING was filed electronically and sent this 13th day of November, 2017, by first-class mail, postage prepaid, to anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

   /s/  Allison M. Near
Allison M. Near, ct27241
Sheehan, Reeve & Near
350 Orange Street, Suite 101
New Haven, CT   06511
(203) 787-9026 (phone)
(203) 787-9031 (fax)
anear@sheehanandreeve.com